**No. 2022-1521**

# United States Court of Appeals for the Federal Circuit

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
*Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,
*Appellee,*

GENERAL ELECTRIC COMPANY, SAVANT TECHNOLOGIES LLC, HOME DEPOT PRODUCT AUTHORITY, LLC, HOME DEPOT U.S.A., INC., THE HOME DEPOT, INC., IKEA SUPPLY AG, IKEA U.S. RETAIL LLC, IKEA OF SWEDEN AB, SATCO PRODUCTS, INC., GLOBAL VALUE LIGHTING LLC, SIGNIFY NORTH AMERICA CORP., FEIT ELECTRIC COMPANY, INC.
*Intervenors.*

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1220

**REPLY BRIEF OF APPELLANT**

*Counsel of Record for The Regents of the University of California on Subsequent Page*

Seth D. Levy
Shawn G. Hansen
Vincent C. Capati
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
regents_itc2@nixonpeabody.com

Angelo J. Christopher
**NIXON PEABODY LLP**
70 West Madison Street, Suite 5200
Chicago, IL 60602-4378

Evan H. Langdon
**FABRICANT LLP**
1101 Pennsylvania Avenue
Suite 300
Washington, DC 20004
elangdon@fabricantllp.com
*Counsel for Appellant The Regents of the University of California*

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 3

A. The Commission's "Molding" Finding Fails on Its Own Merits and Cannot Be Saved By Post Hoc Rationalizations ........................................ 3

1. The Surrounding Claim Language Recites the Structural Requirements Of "Molding" ........................................ 5

2. The FID's Construction Excluded Disclosed Embodiments ..... 6

3. The OCCC Found the Ordinary Meaning of "Molding" To Be Far Broader Than the Construction Applied In The FID ...... 7

4. The OCCC Cherrypicked a Dictionary Definition of the Verb "Mold" Applicable to Butter ........................................ 9

5. The FID Improperly Excluded Imperfect Practice of the Inventions ........................................ 9

6. The '529 and '464 Patents Do Not Disparage "Moldings" Formed By "Glob-top" Processes ........................................ 10

7. Appellees' *Post Hoc* Rationalizations Should Be Rejected ..... 11

i. The Commission Did Not Find "Molding" A Nonce Word ........................................ 11

ii. The Commission Did Not Find "Molding" a Product-by- Process Limitation ........................................ 11

C. The Non-Infringement Findings Regarding "Transparent Surface" Should be Reversed ........................................ 12

1. The OCCC Abdicated the Duty to Construe "Transparent" ..... 13

2. The Commission Changed Course on "Transparent" After the OCCC ....14

3. Intervenor's Construction of "Transparent" Excludes Disclosed Embodiments....16

4. The Record Demonstrates that "Transparent" Means "Allows Light to Pass Through" ....17

5. The Commission's Doctrine of Equivalents Findings Should Be Reversed....19

6. "Transparent surface" ....19

7. "Sapphire plate" ....20

D. The Commission's Invalidity Findings Should Be Reversed....21

1. There is No Evidence that the SGS Would Have Been Obvious ....21

a) Appellees' Attempt to Rehabilitate Weightless Conclusory Testimony as "Summary Testimony" is Meritless....22

b) The Commission's Disparate Enforcement of the Ground Rules Supports Reversal....24

c) Intervenors' New Obviousness Arguments Come Too Late ....27

2. The Commission Ignored Evidence Showing that Yamazaki Does Not Disclose the Cathode/Anode Limitation ....28

3. The Commission Erred in Finding That It Would Have Been Obvious to Combine Yamazaki and Uemura ....29

4. The Commission's Finding that a POSITA Would Combine Minato and Uemura Should be Reversed ....30

E. Feit's Arguments Should Be Rejected ....31

1. The Commission Correctly Rejected Feit's Alternative Construction for "Transparent"....31

2. The Commission's Finding that the Claims Do Not Lack Written Description is Supported by Substantial Evidence .....34

3. Denying Feit's Motion in Limine Was Not an Abuse of Discretion .....35

III. CONCLUSION .....35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................23

*Align Tech., Inc. v. ITC*,
771 F.3d 1317 (Fed. Cir. 2014) ....................22, 25

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ....................23

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008) ....................12

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
796 F.2d 443 (Fed. Cir. 1986) ....................28

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ....................16

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
707 F.3d 1342 (Fed. Cir. 2013) ....................3, 20

*In the Matter of Certain Integrated Cirs., Processes for Making Same, & Prod. Containing Same*,
Inv. No. 337-TA-450, Comm'n Op. ....................25

*Certain Static Random Access Memories & Prods. Containing Same*,
Inv. No. 337-TA-792, Comm'n Op. (June 28, 2013) ....................17, 25

*Chiron Corp. v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004) ....................34

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) ....................26

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
535 U.S. 722 (2002) ....................19

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005) ....................14

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ....................29

*Hill-Rom Services, Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ....................18

*Hynix Semiconductor Inc. v. Rambus Inc.*,
645 F.3d 1336 (Fed. Cir. 2011) ....................34

*IGT v. Bally Gaming Int'l, Inc.*,
659 F.3d 1109 (Fed. Cir. 2011) ....................5, 6

*Interactive Gift Express Inc. v. CompuServe Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ....................18, 27

*InterDigital Comm., LLC v. ITC*,
690 F.3d 1318 (Fed. Cir. 2012) ....................18

*Kaufman v. Microsoft Corp.*,
34 F.4th 1360 (Fed. Cir. 2022) ....................14

*Koito Mfg. Co. v. Turn- Key-Tech, LLC*,
381 F.3d 1142 (Fed. Cir. 2004) ....................23

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ....................*passim*

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ....................27

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) ....................6, 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................4

*Mullins v. U.S. Dep't of Energy*,
50 F.3d 990 (Fed. Cir. 1995) ....................4

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008) ....................13, 14

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
806 F.2d 1565 (Fed. Cir. 1986) ....................24, 26

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
745 F.2d 11 (Fed. Cir. 1984) ....................10

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) ....................21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ....................18

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018) ....................28, 31

*Power Integrations, Inc. v. Lee*,
797 F.3d 1318 (Fed. Cir. 2015) ....................22

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003) ....................18

*TEK Glob., S.R.L. v. Sealant Sys. Int'l*,
920 F.3d 777 (Fed. Cir. 2019) ....................11

*Thorner v. Sony Computer Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................15

*TRUSTID, Inc. v. Next Caller, Inc.*,
No. 2020-1950, 2021 WL 4427918 (Fed. Cir. Sept. 27, 2021)....................28

**Statutes**

5 U.S.C. § 706(2)(A)....................25, 26

35 U.S.C. § 282....................24, 25

# I. INTRODUCTION

The Commission's and Intervenors'[1] (collectively, "Appellees") response briefs are rife with improper *post hoc* rationalizations and unsupported assertions of waiver by The Regents. That is because the findings under review—as articulated below—do not withstand scrutiny on the merits.

The Commission's non-infringement findings were based on erroneous constructions of "molding" and "transparent." The evidence reflected a broad scope of ordinary meaning for both terms. There was no finding of lexicography or disclaimer of claim scope. Nevertheless, the Commission adopted narrow constructions tailor made to exclude the corresponding structures of the Accused Products.[2]

The basis articulated below for finding that the "molding" limitation was not met—the presence of "random irregularities and an uneven surface" that are "not compatible with a finding of being formed 'as if by a mold'"—ignored surrounding claim language, excluded disclosed embodiments, was narrower than the ordinary meaning, cherry-picked a lay dictionary definition applicable to butter, and required

[1] Intervenor Feit Electric Company Inc. ("Feit") submitted a separate brief with many of the same arguments as the other Intervenors. Unless otherwise indicated this Reply addresses the arguments in both briefs.

[2] Abbreviations in this brief follow the Table of Abbreviations at p. xiii of the Blue Brief.

perfection. On its face, the Commission's "molding" non-infringement finding must be reversed.

The term "transparent" was never actually construed. In the Order Construing Certain Claims ("OCCC"), the ALJ rejected Intervenors' proposed constructions and adopted a plain and ordinary meaning construction, as The Regents proposed. The OCCC found that the parties agreed that "transparent" "at least means allowing light to pass through," consistent with The Regents' proposed construction, and it crystallized the parties' dispute to concern "how much light can be scattered by ... a transparent surface." Appx661. Then, the FID moved the goal posts and found the "transparent surface" limitation unmet, among other reasons, based on an unstated light transmissivity threshold and by excluding absorption. The Commission cannot shield its construction from review by framing it as a fact question that is answered only by infringement findings.

The FID impugns as "absurd" the notion that "transparent" means "allows light to pass through." But this is exactly how two Article III judges construed "transparent" in the context of the Tanda reference that the Commission found to disclose the same invention, and how at least one Intervenor proposed to construe "transparent" in other litigation. Intervenors' Miyahara prior art reference expressly teaches that its transparent submount has light transmittance of as low as 1%. Appx138632–138633 (¶[0008]).

The Commission's erroneous construction of "transparent" doomed its equivalence analysis regarding "transparent surface" and "sapphire plate." In both cases, the Commission found that because the accused structures did not literally meet the Commission's erroneous construction of "transparent," they could not constitute equivalents. But vitiation is not shown merely by noting that the equivalent is outside the claim limitation's literal scope. *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

Lastly, the Commission's invalidity findings indisputably lack substantial evidence. Yet the Commission ignored Intervenors' failure of proof and adopted theories of obviousness abandoned by Intervenors, while barring The Regents from pointing out the failures of proof. The APA does not permit the Commission to disparately enforce its rules in this manner, not just waiving Intervenors' rule violations but compensating for them, while straining to interpret the rules to muzzle The Regents from pointing out Intervenors' failures.

## II. ARGUMENT

### A. The Commission's "Molding" Finding Fails on Its Own Merits and Cannot Be Saved By *Post Hoc* Rationalizations

The Commission seeks affirmance of its finding that "molding" was unmet such that the Court can decline to reach all other issues. Red-Br. 22. In service of that aspiration, Appellees resort to rationales not articulated below.

But "the courts may not accept appellate counsel's *post hoc* rationalizations for agency action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). "It is well established that agencies have a duty to provide reviewing courts with a sufficient explanation for their decisions so that those decisions may be judged against the relevant statutory standards, and that failure to provide such an explanation is grounds for striking down the action." *Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 992 (Fed. Cir. 1995). "Deferential judicial review under the Administrative Procedure Act does not relieve the agency of its obligation to develop an evidentiary basis for its findings." *In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002).

The sole factual basis articulated below for the finding that the "molding" was not met was the presence of "random irregularities and an uneven surface" in the Accused Products that "are not compatible with a finding of being formed 'as if by a mold.'" Appx564, Appx118. As discussed below, the ALJ's statements during the *Markman* Hearing and in the OCCC gave no notice that the ALJ would exclude "random irregularities and an uneven surface." The Regents' first opportunity to address this was in its petition for review of the FID. Thus, there was no forfeiture of arguments regarding the negative limitations first disclosed in the FID. Red-Br. 30.

### 1. The Surrounding Claim Language Recites the Structural Requirements Of "Molding"

This Court has cautioned that "claim language must be construed in the context of the claim in which it appears. Extracting a single word from a claim divorced from the surrounding limitations can lead construction astray." *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1117 (Fed. Cir. 2011).

As explained at Blue-Br. 40, contextual claim language, which is identical in both Asserted Patents, recites the structural requirements that the "molding" comprises a phosphor, surrounds the LED, and is configured to extract light from the front and back sides of the device:

> a molding comprising a phosphor and surrounding the LED, the molding configured to extract light from both a front side of the light emitting device and a back side of the light emitting device.

Appx749, Appx782. The claim itself recites structural characteristics sufficient to fairly notify the public of the scope of the claimed "molding" and would not cover any "formed component," as the Commission argues. Red-Br. 25.

The Regents does not contend that the inventors acted as lexicographers in defining "molding." Rather, its argument is that the claim itself recites the structural features of "molding" in the context of which "formed component" is the correct construction. The Commission's Staff concurred with that proposal and agreed that "[t]here is no evidence that any process step is essential to the 'molding' claim term[s], or even that a process is required to produce a molding." Appx668.

Instead of centering on the claim language, the Commission's construction went astray by divorcing "molding" from the surrounding limitations and construing it based on less probative extrinsic evidence. *IGT*, 659 F.3d at 1117.

### 2. The FID's Construction Excluded Disclosed Embodiments

The Specifications disclose numerous embodiments of "moldings" that are "roughened, textured, patterned, or shaped," all of which were excluded by the ALJ's determination that "random irregularities and uneven surfaces" are not compatible with infringement. But "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007).

For example, the embodiment of FIG. 13 includes moldings or shaped optical elements 1314, 1316 with top/front and bottom/back surfaces 1328, 1330 that are "***roughened, textured, patterned, or shaped*** to increase the light extraction through the elements 1314, 1316." Appx746 (at 16:35, 52, 65-66), Appx779 (at 16:22-23, 39, 52-53). FIG. 13 illustrates a molding with "random irregularities and uneven surfaces":



FIG. 13

Appx733, Appx766 (annotations added). Similar disclosures of "moldings" with "random irregularities and uneven surfaces" are found in the embodiments of FIGS. 14, 16, 17, 20A, and 22A.

### 3. The OCCC Found the Ordinary Meaning of "Molding" To Be Far Broader Than the Construction Applied in The FID

During the *Markman* Hearing, the ALJ observed: "I can think of molding something without the use of a mold. You can mold clay. You could mold resin that was pliable in some way without necessarily using a mold." Appx3142 (212:17-20). The ALJ also noted the Intervenors' dictionary definition of "molding" included a "strip of wood":

**mold·ing** \'mōl-ding\ *n* **1** : the act or work of a person who molds **2** : an object produced by molding **3** : a strip of material having a shaped surface and used (as on a wall or the edge of a table) as a decoration or finish
**moldy** \'mōl-dē\ *adj* **mold·i·er; -est** **1** : of, resembling, or covered with a mold **2 a** : being old and moldering **b** : OUTMODED — **mold·i·ness** *n*
[1]**mole** \'mōl\ *n* : a small usually brown and sometimes protruding permanent spot on the skin [Old English *māl*]



molding 3

*See* Appx3134 (204:3-6) (citing Appx7144 (excerpt above, annotations added)). The ALJ thus seemed to reject any requirement of using a mold to produce a "molding" and acknowledged methods of forming a "molding" without a mold.

The OCCC found that in ordinary usage "molding" "encompasses the forming of an object out of any malleable substance by any means." Appx668 (citing Appx7144). It said nothing about excluding "random irregularities and an uneven surface." Appx668-69. And it foreclosed any process requirement in finding that "all parties agree ['molding'] is an object, not a process." Appx669. Then, the FID proceeded to rely on testimony by Dr. Shanfield regarding the alleged manufacturing process[3] of the "molding" in the Accused Products to find it is not a "molding." Appx564.

[3] Dr. Shanfield testified regarding ***only*** Feit products and relied on a YouTube video unconnected to any Accused Product. Appx3544 (1150:11-21). In contrast, the Commission rejected The Regents' evidence obtained through subpoena from filament LED suppliers as insufficiently connected to Accused Products. Appx93.

### 4. The OCCC Cherrypicked a Dictionary Definition of the Verb "Mold" Applicable to Butter

Instead of adopting the ordinary meaning of "molding" that it expressly found, or any of the constructions proposed by the private parties and Staff, the OCCC construed "molding" to mean "a component formed by or as if by a mold." Appx669. This construction is nearly identical to a definition for the verb "mold" as it may apply to butter, found on the same page as the wood "molding" definition the ALJ raised during the Markman hearing:

> [3]**mold** *vb* **1 :** to knead into shape ⟨*mold* loaves of bread⟩ **2 :** to form or become formed in or as if in a mold ⟨*mold* butter⟩ — **mold·able** \ˈmōl-də-bəl\ *adj* — **mold·er** *n*

Appx7144 (annotated). No expert opined this was the correct definition. The OCCC did not acknowledge relying on this definition or explain why it adopted a construction substantially narrower than the ordinary meaning from a lay definition untethered to the technical subject matter.

### 5. The FID Improperly Excluded Imperfect Practice of the Inventions

In the FID, the ALJ articulated no explanation for why the presence of "random irregularities and an uneven surface" is "not compatible with a finding of being formed 'as if by a mold.'" Appx564. The unstated implication of the ALJ's finding is that a structure formed "as if by a mold" cannot have irregularities or uneven surfaces. Even this inference requires further unstated assumptions: that the material of the molding cannot cure, harden, or age unevenly or otherwise take on

irregularities post-manufacture. These logical leaps are unjustified because, under this Court's law, "[i]mperfect practice of an invention does not avoid infringement." *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 20 (Fed. Cir. 1984).

### 6. The '529 and '464 Patents Do Not Disparage "Moldings" Formed By "Glob-top" Processes

The Commission argues that the '529 and '464 patents disparage the "glob-top" process in a manner that excludes it from the scope of "molding." Red-Br. 27; Appx688 (5:27-30); Appx710 (5:42-45). But the cited portions of the '529 and '464 patents make no reference to a "glob-top" process or "molding," much less deem them mutually exclusive:

> In conventional white LEDs, the phosphor conversion layer is typically placed directly on top of the blue GaN chip. The surface is usually smooth and conformal to the surface of the GaN chip. The blue photons from the GaN chip are down converted into photons of lower energy (Yellow, Green, and Red) in the phosphor conversion layer. A large fraction of these photons are internal reflected in the phosphor conversion layer and directed back toward the chip where they are reabsorbed. This results in a decrease in overall luminous efficiency.
>
> Previous applications of the phosphor conversion layer are limited to placing a gel or other liquid form of material onto the chip, and allowing the phosphor to cure. This non-uniform and typically smooth application of the phosphor does not take into account several factors that can be used to increase the efficiency of the LED.

Appx688 (5:14-30)

> In conventional white LEDs, the phosphor conversion layer is typically placed directly on top of the blue GaN chip. The surface is usually smooth and conformal to the surface of the GaN chip. The blue photons from the GaN chip are down converted into photons of lower energy (Yellow, Green, and Red) in the phosphor conversion layer. A large fraction of these photons are internal reflected in the phosphor conversion layer and directed back toward the chip where they are reabsorbed. This results in a decrease in overall luminous efficiency.
>
> Previous applications of the phosphor conversion layer are limited to placing a gel or other liquid form of material onto the chip, and allowing the phosphor to cure. This non-uniform and typically smooth application of the phosphor does not take into account several factors that can be used to increase the efficiency of the LED.

Appx710 (5:30-45)

The Commission cites no evidence equating the "phosphor conversion layer" described in these excerpts with "glob-top" processes. Nor is there any connection between these excerpts and the later descriptions of "molding" in the '529 and '464

patents. The "glob-top" process is essentially the same as the ALJ's example, "[y]ou could mold resin that was pliable in some way without necessarily using a mold." Appx3142 (212:17-20).

### 7. Appellees' *Post Hoc* Rationalizations Should Be Rejected

#### a) The Commission Did Not Find "Molding" A Nonce Word

The Commission asserts that The Regents' construction "treats 'molding' as a nonce word." Red-Br. 23. This is neither accurate nor a basis for the Commission's action. There was no finding below that "molding" is a nonce word invoking § 112, ¶ 6. The Commission's findings cannot be defended on this basis. *In re Lee*, 277 F.3d at 1344.

Moreover, the Commission's cited authority explains that nonce words "typically do not connote sufficiently definite structure." *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 786 (Fed. Cir. 2019). And in that case, this Court found the term "conduit" ***not*** to be a nonce word because it "recites sufficiently definite structure to avoid classification as a nonce term." *Id*. at 787. The same is true here, as explained above.

#### b) The Commission Did Not Find "Molding" a Product-by-Process Limitation

Intervenors argue that the Commission's construction is a proper product-by-process limitation. Green-Br. 77. However, the ALJ did not find "molding" to be a

product-by-process limitation, so this argument is an impermissible *post hoc* rationalization. *Lee*, 277 F.3d at 1344.

Moreover, it would be improper to impose a process limitation in these apparatus claims because "the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008).

The Asserted Claims do not recite any method steps or refer in any way to the process by which the claimed "molding" is made. Intervenors' cited cases all involve claim limitations expressly reciting manufacturing methods. Green-Br. 77. These are inapposite as the OCCC found that "molding," "is an object, not a process." Appx669.

### B. The Non-Infringement Findings Regarding "Transparent Surface" Should be Reversed

There is no dispute that all Accused Products include a "transparent surface" under The Regents' construction of "transparent." The Commission's non-infringement findings resulted from its erroneously narrow construction. The very first the thing the FID referenced in its analysis of "transparent" was whether "sheets of paper, human ears, and white clothing" are transparent. Appx450. This reliance on lay notions unmoored to the patents portended the Commission's fundamentally flawed approach to claim interpretation.

### 1. The OCCC Abdicated the Duty to Construe "Transparent"

The OCCC summarized the parties' dispute concerning "transparent" as follows:

> As can be seen in the proposed constructions, the parties agree that transparent at least means allowing light to pass through. Beyond that, the parties' dispute is about how much light can be scattered by a transparent plate or a transparent surface. That is a factual question.

Appx661.

On one hand, the OCCC left open the possibility that The Regents' construction—allows light to pass through—was correct. *Id*. On the other hand, the OCCC suggested whether a surface is "transparent" may depend on how much light it scatters. *Id*. The ALJ expressly declined to "resolve that dispute" prior to the evidentiary hearing. *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Tellingly, neither the Commission nor Intervenors identify how "transparent" was construed other than by finding all but one Accused Product and one Licensee DI Product non-infringing.

Contrary to Appellees' arguments, not informing "the ALJ before the evidentiary hearing that more construction for the term 'transparent' was necessary" did not operate as a waiver. Red-Br. 33; Green-Br. 65-68. This Court recognizes that when "the claim-construction position of the appellant was 'made clear to the district court,' a further objection would have been 'not only futile but unnecessary'" to

preserve the issue for appeal. *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1370 (Fed. Cir. 2022) (quoting *O2 Micro*, 521 F.3d at 1359). In *Kaufman*, the court found waiver because the appellant did not propose a construction prior to trial. 34 F.4th at 1369. By contrast, The Regents preserved this issue by proposing its construction during the *Markman* proceedings and raising it in its petition for review. Appx660; Appx112806, Appx112859-112870.

While judges may have discretion on timing, Green-Br. 65-66, this Court should hold that when a judge orders *Markman* briefing, receives testimony and evidence on claim construction, holds a *Markman* hearing, and issues a *Markman* order, that order should resolve the parties' dispute pursuant to *O2 Micro*. Regardless, "the court must construe the asserted claims" as the first step in an infringement analysis. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005). The issue is not that the ALJ failed to construe "transparent" "with precision," as Intervenors wrongly frame The Regents' argument. Green-Br. 69. It is that the ALJ's "plain and ordinary meaning" construction punted on the parties' dispute and prevented proper infringement analysis by skipping the mandatory first step of construing "transparent" as a matter of law.

### 2. The Commission Changed Course on "Transparent" After the OCCC

In adopting the plain and ordinary meaning, the OCCC seemingly accepted at least some of The Regents' construction and rejected at least some aspects of

Intervenors' constructions. Appx661. For example, the OCCC only identified scattering as a potential consideration, tacitly rejecting the non-Feit Intervenors' argument that "transparent" excludes "significant … absorption." Appx660-661. Yet the Commission relied on absorption in its non-infringement findings. Appx89.

The OCCC also gave no hint that whether something is "transparent' hinges on light transmissivity percentages. Appx660-661. Contrary to Intervenors' suggestion (Green-Br. 59-60), the Commission explicitly found the Accused Products "are not transparent based on transmission testing (showing a transmissivity below 60 percent)"—the Commission expressly imposed at least a 60% transmissivity threshold. Appx89; Appx450. No expert testified that such a requirement was appropriate. Blue-Br. 24-25. Intervenors' attempt to recharacterize the Commission's analysis as something other than a transmissivity requirement is yet another improper *post hoc* rationalization. Green-Br. 59-60.

The OCCC never distinguished between the specification's reference to semi-transparent electrodes and the term "transparent" in the claims. Appx660-661. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (holding that only lexicography and disavowal justify departure from ordinary meaning). Applying the plain and ordinary meaning also operated as a rejection of Intervenors' acontextual arguments regarding an ambiguous statement in the prosecution history distinguishing DBRs in VCSELs as not transparent because they

are "primarily reflective." Blue-Br. 28-30. That is, the phrase "some light" did not refer to some percentage of light – it referred to the fact that only some wavelengths pass through the DBR, while others are 100% reflected. Appx141686-92 (3:52-54, FIG. 2). The Commission's non-infringement findings based on these considerations came out of the blue after the OCCC's guidance that whether something is "transparent" turns on "how much light can be scattered." Appx91-92; Appx661.

The APA prohibits agencies from engaging in such shifting sands construction. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015). The Commission went far beyond merely clarifying the construction—it imposed entirely new limitations. The Regents would have allocated its limit hearing time differently had the OCCC identified, for example, absorption as relevant to whether something is "transparent."

#### 3. Intervenor's Construction of "Transparent" Excludes Disclosed Embodiments

The Regents' Patents teach roughening transparent surfaces to induce scattering because that increases light extraction. Red-Br. 37; Green-Br. 62; Blue-Br. 27-28. The Commission found that the Accused Products are not "transparent," in part, because of scattering. *See, e.g.*, Appx89-92; Appx120. To justify its finding, the Commission argues that the surface scattering in The Regents' Patents is different than the "scattering in the bulk material" in the Accused Products. Green-Br. 37-38. This is a non-sequitur. The '854 patent claims a "transparent ***surface***,"

not a bulk material. Appx749. If the surfaces in the Accused Products are not "transparent" because they scatter light, then the "transparent" surfaces disclosed in The Regents' Patents would also not be considered "transparent." Exclusion of disclosed embodiments cannot be correct. *MBO Labs.*, 474 F.3d at 1333.

The non-Feit Intervenors misleadingly argue that The "Regents failed 'to demonstrate that roughening present on the Accused Products—if any—will 'increase light extraction.'" Green-Br. 61 (quoting Appx 468). The Commission reversed the FID on this point and found that the Accused Products have roughened surfaces that increase light extraction. Appx95-98. Intervenors' arguments regarding whether there is a "need to roughen the surface" are misdirection: scattering cannot be excluded from a proper construction of "transparent" regardless of need.

#### 4. The Record Demonstrates that "Transparent" Means "Allows Light to Pass Through"

The Commission's characterization of The Regents' construction as "absurd" is belied by the fact that multiple Article III judges have construed the term "transparent" in LED patents to mean "allows light to pass through." Blue-Br. 31-32. Appellees wrongly characterize those patents as "unrelated" (Red-Br. 39; Green-Br. 63-64) when one of them—Tanda—was found by the Commission to disclose the ***same*** invention as The Regents' Patents (Blue-Br. 30-31). Intervenor GE also argued for this construction in PTAB proceedings. Blue-Br. 24.

Appellees also do not dispute that Miyahara teaches that "a ceramic material that possesses a light transmittance of not less than 1%" is considered "transparent" in the field of LEDs. Blue-Br. 33; Appx138632–138633 (¶[0008]). Instead, Appellees claim wavier. Red-Br. at 40; Green-Br. 64. Contrary to Intervenors' assertions (Green-Br. 64), Miyahara was cited during prosecution of one of The Regents' patents (the grandparent to the '854 patent). Appx128879 (citing JP2005035864). This Court permits parties to offer "additional or new supporting arguments, based on evidence of record" for its construction, as The Regents has done. *Interactive Gift Express Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001).

Nothing in the specification—including its reference to semi-transparent electrodes—limits the term "transparent" in the ways the Commission did. The "transparent" materials listed in the specification are non-limiting examples. *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). Indeed, the '854 patent's dependent claims reinforce this. Appx749; *InterDigital Comm., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). That Intervenors can cite dictionaries supporting a narrow construction—which also support a broad construction—does not justify limiting the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*); *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1357 (Fed. Cir. 2003).

### C. The Commission's Doctrine of Equivalents Findings Should be Reversed

The ALJ expressly found that "not-insubstantial amounts of light pass through the submounts" in the Accused Products. Appx559. Human vision hardly can discern the differences in light intensity between the front and back sides of the Accused Products and Licensee DI Products—products found infringing as well as non-infringing. Appx3356 (604:22–606:21); Appx3452 (888:24–889:15).[4] This is a prime example of insubstantial differences, the touchstone of equivalence. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731-32 (2002).

#### 1. "Transparent surface"

With respect to "transparent surface," Appellees argue that the Court should decline to reweigh evidence. Red-Br. 46-48; Green-Br. 70-71. But what The Regents seeks review of is the Commission's circular reasoning in its function-way-result analysis. *See* Appx94-95. For instance, the Commission found the Accused Products lack a "transparent surface" due to pores and grain boundaries causing scattering and absorption, but then found the Accused Products are not equivalent to a "transparent surface" for the same reason. *Id*. The Commission found the surfaces in the Accused

[4] The non-Feit Intervenors' brief includes transmissivity percentages calculated by counsel from light intensity ratios. Green-Br. 52-53. If one takes the natural log of the numerator and denominator, the light intensity from the front is only about 1.1 times greater than the back from the human perspective. Appx3356 (605:12-12); Appx115467.

Products are not equivalents merely because they did not literally meet the Commission's erroneous construction of "transparent," but that is not the correct analysis. *Brilliant*, 707 F.3d at 1347. Dr. Schubert provided an appropriate function-way-result analysis that avoided the circular logic the Commission fell prey to. Appx3363 (632:19-634:21), Appx3361 (624:16-626:22); Appx115486, Appx115481.

The ALJ's finding that the word "transparent" would be vitiated by the asserted equivalent is wrong. Appx464. Human vision cannot distinguish between them. Appx3356 (604:22–606:21); Appx3452 (888:24–889:15). Appellees characterize at least some Accused Products as "semi-transparent." Red-Br. 41; Green-Br. 71). Finding "semi-transparent" surfaces to be an equivalent would not vitiate "transparent" in the claims. *Brilliant*, 707 F.3d at 1347.

**2. "Sapphire plate"**

With respect to "sapphire plate," the Commission's equivalence analysis was tainted by its erroneously narrow construction of "transparent." Appx124-126; *supra*, § II.B. To wit: the Commission found that the "way" the "sapphire plate" performs its function is by "being a transparent material." *Id*. (quoting Appx590). Documents produced pursuant to subpoena by major filament LED suppliers showed that in the industry, both ceramic and sapphire submounts are considered "transparent." Appx3362 (629:13–16); *see also* Appx115479 (excerpting

Appx123674), Appx115480 (excerpting Appx115844). The crystal structure of the same elemental composition is the only difference between sapphire, which the parties agree is transparent, and the polycrystalline $Al_2O_3$ submounts in the Accused Rigid Products. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005). Finding the accused submounts not equivalent to the "sapphire plate" because they did not literally meet the erroneous construction of "transparent" failed to consider the insubstantiality of the differences.

### D. The Commission's Invalidity Findings Should Be Reversed

#### 1. There is No Evidence that the SGS Would Have Been Obvious

The ALJ found that the record is "devoid of any evidence" to support a finding that the SGS would have been obvious. Appx580. This alone compels a conclusion that the Commission's obviousness findings lack substantial evidence.

Dr. Lebby's testimony that Yamazaki and Minato "invalidate all the claim elements" is the epitome of conclusory testimony entitled to no evidentiary weight. Appx3561 (1220:13-1221:2), Appx3568 (1246:6-20). There was no summary adjudication that eliminated any invalidity issues for trial. Yet the Commission rationalized Intervenors' failures of proof based on what The Regents' pre-hearing brief allegedly failed to dispute. Intervenors bore the burden to prove each and every element of their invalidity defense during the hearing regardless of whether The Regents' pre-hearing brief contained substantive rebuttals for each element.

#### a) Appellees' Attempt to Rehabilitate Weightless Conclusory Testimony as "Summary Testimony" is Meritless

Having adduced ***no testimony*** on the SGS, Appellees now attempt to recast Dr. Lebby's conclusions as "summary testimony" under Federal Rule of Evidence ("FRE") 705. Red-Br. 56-60; Green-Br. 83-84. But the Commission did not rely on Dr. Lebby's testimony, let alone characterize it as a "summary" in finding the SGS obvious. Appx135-137, Appx140-141. This is yet another improper *post hoc* rationalization. *Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015); *Align Tech., Inc. v. ITC*, 771 F.3d 1317, 1324 (Fed. Cir. 2014).

Even if considered, Appellees' proffered authority on "summary testimony" is inapposite. In *Symbol Techs., Inc. v. Opticon, Inc.*, "[t]he court admitted into evidence charts and drawings" linking each claim limitation to a numbered part on the accused products. 935 F.2d 1569, 1574 (Fed. Cir. 1991). "Using the exhibits as a guide," the infringement expert testified that each "claim limitation reproduced on the charts was met by the corresponding numbered structure of the device shown in the drawings." *Id*. Those facts are a far cry from this case: Intervenors' pre-hearing claim charts were neither admitted into evidence nor testified about by Dr. Lebby.[5]

[5] The Commission's argument that Dr. Lebby's demonstrative slides are evidence is meritless. Red-Br. 59; Appx141681 (indicating the demonstrative was not admitted as evidence); Appx140930 (74:14-16) (a demonstrative "will not be its own evidence").

Regardless of whether the Commission is bound by the FRE, it must have an evidentiary basis to find the SGS obvious. *TQ Delta*, 942 F.3d at 1358.

The Commission's argument that the law should not "require more than summary showings where a claim limitation is undisputed" (Red-Br. 60) ignores that the Commission has a procedure for summary adjudication where issues are not in genuine dispute. It also violates this Court's holdings that "[c]onclusory expert testimony is inadequate to support an obviousness determination on substantial evidence review." *TQ Delta*, 942 F.3d at 1359; *see also Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (holding that "conclusory statements and unspecific expert testimony" are insufficient); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012); *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004). Requiring parties to adduce evidence sufficient to meet their burden of proof is the very purpose of a trial, not "gamesmanship" or "unnecessary litigation," as the Commission argues. Red-Br. 60.

Appellees' attempt to distinguish this Court's precedent about conclusory testimony as allegedly limited to "contested, not uncontested, limitations" misses the mark. Red-Br. 59; Green-Br. 85. The presence or absence of rebuttal evidence from the patentee does not sanction conclusory invalidity testimony. This is illustrated in *TQ Delta*, which only considered the sufficiency of the petitioner's evidence without weighing rebuttal evidence. 942 F.3d at 1361-63. Intervenors' proffered authority—

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co., Ltd.*—does not stand for the proposition that unimpeached testimony establishes invalidity; quite the contrary, *Imperium* reinforces that "detailed testimony about how [the prior art] discloses each of the limitations" is required. 757 Fed.Appx. 974, 978 (Fed. Cir. 2019). There is no such testimony here.[6]

At bottom, the Commission stripped The Regents' Patents of their presumption of validity by finding them invalid solely because The Regents' pre-hearing brief did not disclose evidence of non-obviousness for the SGS. 35 U.S.C. § 282; *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986).

#### b) The Commission's Disparate Enforcement of the Ground Rules Supports Reversal

The Regents' pre-hearing brief did not admit that the SGS was obvious. The Ground Rules required that a party's brief disclose contentions that party intended to "address at hearing." Appx111679. The Regents did that. The post-hearing brief rule authorized the parties to respond to evidence and arguments in an opponent's post-hearing brief. Appx111688-111689. The Regents did that by pointing out Intervenors' failure to prove invalidity during the hearing. No Ground Rule provides

---

[6] Feit's argument that the Commission was "entitled to rely on the description of Dr. Lebby's expert opinions" in its pre-hearing brief is meritless because (1) Dr. Lebby's unsworn report is not in the record and (2) arguments in a brief are not evidence. Feit-Br. 59-60; Blue-Br. 51-52.

that a party waives challenges to the sufficiency of their opponent's hearing evidence based on their pre-hearing brief nor that omitting rebuttal contentions results in a matter being deemed established.

The Commission's decision to strike The Regents' failure of proof arguments should be reversed because it is not supported by the Ground Rules. *Align Tech.*, 771 F.3d at 1325. The Commission previously instructed that "rely[ing] on the fact that certain limitations in [the claim] are 'undisputed'" is insufficient. *Certain Static Random Access Memories & Prods. Containing Same*, Inv. No. 337-TA-792, Comm'n Op. at 26 (June 28, 2013); *see also In the Matter of Certain Integrated Cirs., Processes for Making Same, & Prod. Containing Same*, Inv. No. 337-TA-450, Comm'n Op. at 73-82 (July 23, 2003) (holding that complainant failed to prove infringement even though respondents ***stipulated*** not to contest infringement). The Commission failed to identify any legal or factual basis for its decision to find the opposite in this case.

The Commission's decision is also not "in accordance with law." 5 U.S.C. § 706(2)(A). The Regents' Patents are presumed valid. 35 U.S.C. § 282. The Regents thus had no obligation to submit "evidence in support of a conclusion of validity." *Orthokinetics*, 806 F.2d at 1570. The Commission's finding that The Regents could not raise failure of proof arguments because its pre-hearing brief did not contain substantive rebuttal contentions for the SGS inappropriately shifted the burden of

proof to The Regents. *Lee*, 277 F.3d at 1344 (failing to consider precedent "is both legal error and arbitrary agency action").

Striking The Regents' failure of proof arguments was also "arbitrary, capricious, [and] an abuse of discretion." 5 U.S.C. § 706(2)(A). There is no dispute that Intervenors' opening post-hearing brief did not set forth obviousness contentions "in detail." Appx111688; Feit-Br. 57 (acknowledging Intervenors failed to do so). The Ground Rules authorized The Regents to respond to this. The Commission's decision to strike failure of proof arguments in The Regents' post-hearing brief, while turning a blind eye to Intervenors' non-compliance with the briefing rules, was outside any "zone of reasonableness" and cannot stand. *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

Intervenors assertions of "prejudice" should the Court reverse the Commission's findings are of Intervenors' own making. Green-Br. 84; Feit-Br. 57. Nothing prevented Intervenors from attempting to prove invalidity during the hearing. Intervenors elected not to do because they believed providing "detailed testimony" would amount to "wasting the ALJ's time." Green-Br. 84. Intervenors should not be shielded from the consequences of that decision by an untenable interpretation of the Ground Rules.

Finally, even if the Court accepted Appellees' argument that The Regents' pre-hearing brief waived any failure of proof argument, Appellees do not dispute

that the Court can—and in this case should—consider The Regents' arguments notwithstanding the alleged waiver. Blue-Br. 57-58. It is beyond doubt that Intervenors failed to prove obviousness, and it would result an unfair procedure if The Regents were barred from arguing that. *Interactive Gift*, 256 F.3d at 1344-45.

#### c) Intervenors' New Obviousness Arguments Come Too Late

Intervenors' failures of proof at the hearing are underscored by their extensive citations to materials that neither the Commission nor Intervenors relied on below for the SGS. Green-Br. 86-89; Feit-Br. 59. Such *post hoc* rationalizations are impermissible. *Lee*, 277 F.3d at 1345. Indeed, it would have been improper for the Commission to base its findings on these materials because Intervenors did not rely on them for the SGS. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016). That is why the Commission reversed the ALJ's finding that the SGS was obvious in view of Uemura. Appx108, Appx110-111, Appx136-137.

In any event, even if these materials all qualify as prior art (which Intervenors did not establish), they merely show that a SGS is one of several possibilities, including removing the SGS. Blue-Br. 49. The fact that sapphire was a known growth substrate—standing alone—does not mean that the claimed invention would have been obvious. *Polaris*, 882 F.3d at 1068.

### 2. The Commission Ignored Evidence Showing that Yamazaki Does Not Disclose the Cathode/Anode Limitation

The Commission's finding that Yamazaki discloses the cathode/anode limitation hinged on Intervenors' argument that Yamazaki's conductive pattern 11a comprises surface-mount j-leads ("SMJs") that wrap around the substrate 11. Appx130. Appellees do not dispute that FIGS. 2-3 of Yamazaki show the conductive pattern 11a ***only*** on the top surface of the substrate 11, i.e., ***not*** wrapping around the substrate 11. Blue-Br. 58-60. "It is impermissible … to pick and choose from any one reference only so much of it as will support a given position," yet that is what the Commission did by ignoring the contradictory disclosures in FIGS. 2-3. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 448 (Fed. Cir. 1986).

Additionally, the Commission's failure to explain why it rejected The Regents' arguments regarding FIGS. 2-3 and accepted Dr. Lebby's testimony violated the APA. Appx133; Appx498-499; Appx580; Appx601; *TRUSTID, Inc. v. Next Caller, Inc.*, No. 2020-1950, 2021 WL 4427918 at *8 (Fed. Cir. Sept. 27, 2021). The Commission also violated the APA by failing to explain why it rejected Dr. Schubert's testimony that the conductive pattern 11a are thin metallizations (not j-leads) that do not provide support. Appx3589 (1331:16-1332:8); Appx133; Appx499 (acknowledging Dr. Schubert's testimony but finding that structural support was not required in claims of different patents). Each of these failures warrants reversal.

### 3. The Commission Erred in Finding That It Would Have Been Obvious to Combine Yamazaki and Uemura

Appellees offer two defenses for the Commission's finding that the cathode/anode limitation would have been obvious in view of Yamazaki and Uemura. First, Appellees argue that Yamazaki's SMJs and Uemura's through-pin leads were "two interchangeable alternatives" and that this alone is sufficient to establish obviousness. Red-Br. 63-64; Green-Br. 91-92. As an initial matter, this is directly contradicted by the Commission's admission that Minato has a third type of lead package. Red-Br. 69. Regardless, there is no evidence as to why a POSITA might choose through-pin leads (Uemura) instead of SMJs (Yamazaki). *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (instructing that courts should weigh the advantages and disadvantages to an obviousness combination). At best, Dr. Lebby gave an example where SMJs might be preferable over through-pins, but not the other way around. Appx3557 (1203:13-18).

Second, Appellees argue that a skilled artisan would be motivated to replace Yamazaki's SMJs with Uemura's through-pin leads to lower the manufacturing cost. Red-Br. 66; Green-Br. 92. The evidence does not support this conclusion. Dr. Lebby testified that "the specification of Uemura" describes "lower[ing] the manufacturing cost by using the alignment of the parts." Appx3564 (1232:4-13). But Appellees do not dispute that Uemura describes modifying the base—not the lead type—for easier manufacturing. Blue-Br. 62-63 (citing Appx138155 (3:16-21)).




Appx138149 (FIG. 1) (annotated)

There is simply no evidence, much less substantial evidence, that replacing SMJs with through-pin leads would lower manufacturing costs.

#### 4. The Commission's Finding that a POSITA Would Combine Minato and Uemura Should be Reversed

The only rationale the Commission identified for combining Minato and Uemura to meet the cathode/anode limitation was that there were "two well-known, interchangeable options for packaging LEDs: using through-pins or using SMJs." Appx139. Yet the Commission found that Minato's pull-out leads are thin wires, ***not*** SMJs nor through-pins. Appx512; Appx138; Appx3587 (1332:11-20); Red-Br. 69. There is no evidence that Uemura's through-pins were a known alternative for Minato's thin wires, so the Commission resorts to arguing none is required. Red-Br.

69. But the fact that SMJs and through-pin leads were interchangeable is not evidence that thin stranded wires and through-pin leads are interchangeable.

Intervenors sidestep the flaws in the Commission's logic by misrepresenting that Dr. Lebby testified "how an artisan would be motivated to combine" Minato and Uemura. Green-Br. 96. Dr. Lebby never testified ***why*** one would have allegedly replaced Minato's thin wires with Uemura's through-pin leads. Appx3568 (1248:21-1252:1). And, as discussed above, Intervenors' assertion that Uemura's through-pins would be easier to manufacture relative to Minato's pull-out leads is not supported by any evidence. *Supra*, § II.D.3. The mere fact that one *could* have combined Minato and Uemura is insufficient to establish that it *would* have been obvious to do so. *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1070 (Fed. Cir. 2018).

### E. Feit's Arguments Should Be Rejected

Feit—the only Intervenor with a product found to have a "transparent surface" (Appx119)—alone raises additional arguments.

#### 1. The Commission Correctly Rejected Feit's Alternative Construction for "Transparent"

Feit's proposed construction—"transmits light without scattering so that objects can be clearly seen"—cannot be correct because it excludes ***any*** scattering, even though The Regents' Patents teach inducing scattering to increase light extraction from transparent surfaces. Feit-Br. 30-31; *supra*, § II.B.3. This construction would also exclude sapphire, which all parties agreed was transparent.

Appx2985 (55:11-13). Feit's construction not only contradicts the intrinsic record, but it also contradicts sworn testimony Feit offered in other litigation. Appx7873-7874.

Feit argues "no record evidence" shows that inducing scattering on a transparent surface "makes it so that objects cannot be clearly seen." Feit-Br. 37. In so doing, Feit mischaracterizes Dr. Shanfield's testimony; he showed that text is not readable through frosted (roughened) glass unless modified. Feit-Br. 37 (citing Appx3539-40 (1132:13-1134:6)).



Appx135319; Appx3539 (1133:3-16). Dr. Schubert similarly testified that when a transparent surface is roughened, "[t]he imaging information gets lost." Appx (600:1-8, 600:20-601:17); Appx115463.





Under Feit's construction, glass surfaces that scatter light would not be "transparent." This cannot be correct in view of the intrinsic record. *Supra*, § II.B.3.

To the extent a surface is "transparent" when "objects can be clearly seen" through it, this reinforces that the Commission's interpretation of "transparent" was unduly narrow. Dr. Speck testified that one could "read a newspaper through" the metal electrodes the Commission characterized as only "semi-transparent." Appx3253 (309:13-310:1, 310:17-311:6). In Feit's flexible products, the LEDs are more visible through the polyimide surface than the text in the frosted glass example. Feit-Br. 37.



Appx141166 (front)



Appx141168 (back)

The Regents' construction does not "render the term 'transparent' superfluous," as Feit argues. Feit-Br. 35-36. There is a bright line between transparent and non-transparent: filament LEDs with metal submounts—which do not let light pass through—do not have a "transparent surface." Blue-Br. 39.

### 2. The Commission's Finding that the Claims Do Not Lack Written Description is Supported by Substantial Evidence

Feit asks the Court to reverse the Commission's finding that the claims do not lack written description support. Feit-Br. 72. Compliance with the written description requirement is a question of fact. *Hynix Semiconductor Inc. v. Rambus*

*Inc.*, 645 F.3d 1336, 1351-52 (Fed. Cir. 2011). While it attempts to identify a supposed legal error, Feit's admission that the ALJ correctly decided "all of the underlying factual disputes" is dispositive because the ALJ's conclusion that there is written description support was a factual determination. Appx141413.

The Commission found that the claims are supported by the provisional application to which The Regents' Patents claim priority. Appx578-579, Appx599. As noted in the FID, The Regents overcame a written description rejection and priority date issue related to the cathode/anode limitation during prosecution of a related application. Appx578-579. Intervenors lost their challenge to The Regents' priority claim on the basis that the provisional allegedly did not disclose the cathode/anode limitation. The claims are entitled to the provisional filing date and thus have adequate written description support. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004).

What is more, Intervenors failed to meet their burden because Dr. Lebby's testimony regarding written description failed to address any figures beyond FIGS. 22A-B. Dr. Schubert's testimony was unrebutted that FIG. 8 of the '447 provisional—which is the same as FIG. 8 in The Regents' Patents—discloses the cathode/anode limitation. Appx3590 (1335:5-18).

### 3. Denying Feit's Motion *in Limine* Was Not an Abuse of Discretion

At Dr. Schubert's direction, a third-party engineering firm created five technical analysis reports for five Feit products, which were admitted into evidence. *See, e.g.*, Appx141121-141171. These reports contained a wide array of measurements and test results, a small fraction of which involved chemically removing the yellow/orange encapsulant to expose the underlying structures. *See, e.g.*, Appx141164-141171. The ALJ declined to rely on those portions of the reports. Appx445-446. On this record, Feit's argument that the Commission abused its discretion by not excluding ***"all five*** testing reports" in their ***entirety*** is objectively baseless. Feit-Br. 46.

## III. CONCLUSION

For all the foregoing reasons, the judgment of the ITC should be reversed.

Date: December 5, 2022 Respectfully submitted,

*/s/ Shawn G. Hansen*
Seth D. Levy
Shawn G. Hansen
Vincent C. Capati
**NIXON PEABODY LLP**
1 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Telephone: (213) 629-6000
Facsimile: (213) 629-6001

Angelo J. Christopher
**NIXON PEABODY LLP**
70 West Madison Street, Suite 5200
Chicago, IL 60602-4378
Telephone: (312) 977-4400
Facsimile: (844) 709-6738

Evan H. Langdon
**Fabricant LLP**
1101 Pennsylvania Avenue
Suite 300
Washington, DC 20004
elangdon@fabricantllp.com

*Counsel for Appellant*
*The Regents of the University of California*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I certify that the brief contained herein has a proportionally spaced 14-point font typeface and contains 6,998 words, based on the "Word Count" feature of Microsoft Word for Microsoft 365, excluding the cover page, Tables of Contents and Authorities, signature block, and Certificate of Compliance.

Date: December 5, 2022

*/s/ Shawn G. Hansen*
Shawn G. Hansen
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Telephone: (213) 629-6000
Facsimile: (213) 629-6001

*Counsel for Appellant*
*The Regents of the University of California*